IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CARROLL W. PUCKETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:06-cv-1148-WKN |
| | ) | |
| MCPHILLIPS SHINBAUM, LLP; | ) | |
| JULIAN MCPHILLIPS; KENNETH | ) | |
| SHINBAUM; AND AMELIA STRICKLAND, | ) | |
| | ) | |
| Defendants. | ) | |

## MOTION FOR SUMMARY JUDGMENT

Come now the defendants in the above styled case and move this Honorable Court to enter summary judgment in their favor.  As grounds for said motion, defendants show unto the Court that there are no material issues of fact, and they are each entitled to summary judgment as a matter of Law.

This motion is submitted on the following:

1.    The affidavit of Julian McPhillips attached as Exhibit A.

2.    The affidavit of Kenneth Shinbaum attached as Exhibit B.

3.    The affidavit of Amelia Strickland attached as Exhibit C.

4.    The brief submitted herewith.

Dated this 29th day of January, 2007.

Respectfully submitted,

s/Robert D. Segall
Robert D. Segall (SEG003)
Shannon L. Holliday (HOL088)
*Attorneys for Defendants*

Copeland, Franco, Screws & Gill, P.A.
Post Office Box 347
Montgomery, AL 36101-0347
Phone: 334-834-1180
Fax: 334-834-3172
email: segall@copelandfranco.com
email: holliday@copelandfranco.com

### CERTIFICATE OF SERVICE

I certify that on this 29th day of January, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and have mailed by United States Postal Service the document to the following non-CM/ECF participants:

George E. Jones, III, Esq.
711 Alabama Avenue
Selma, AL 36701
Phone: 334-874-6618

s/Robert D. Segall
Of Counsel

## AFFIDAVIT OF JULIAN L. MCPHILLIPS, JR.

Before me, the undersigned Notary Public, on this day personally appeared **Julian L. McPhillips, Jr.** , who first being duly sworn stated the following:

1.    My name is Julian L. McPhillips, Jr.. I am an attorney licensed to practice law in the State of Alabama. I am competent to make this affidavit, and this affidavit is made upon my personal knowledge.

2.    I am one of the defendants named in the complaint filed by Carroll W. Puckett against the law firm of McPhillips Shinbaum, L.L.P. and against Kenneth Shinbaum, Amelia Strickland and me.

3.    I have not engaged in any defamation of character against Mr. Puckett. Nor have I said or written anything that is untrue about him or that has otherwise harmed his reputation.

4.    Since Mr. Puckett's termination, I have not spoken about the circumstances concerning his departure from the firm with anyone other than members of the law firm and my wife, who holds my power of attorney, and with whom I have a confidential relationship. I did confirm to a few individuals that Mr. Puckett had filed a lawsuit against this firm.

5.    Further, Mr. Puckett's termination had absolutely nothing to do with his age, sex, national origin, religion, or disability. It was made for economic reasons

**EXHIBIT A**

at a time when the firm had experienced several tight months financially and when my own personal illness caused me to doubt that I would be able to return to the firm at all.  Attached hereto as Exhibit "1" is the letter I wrote to Mr. Puckett terminating his employment.

6.    Mr. Puckett's notice of termination was dated April 28, 2006, and I didn't return to full-time work until August 7, 2006.  During that 3 ½ months I came to the office only sparingly to check on things, and did very little legal work. Even after I returned full time to work on August 7, 2006 (sixty pounds lighter due to my illness than in January, 2006), it was not until mid-to-late October, 2006 that I fully regained my good health. Even then, I remained, and still remain, as of late January 2007, thirty pounds less than my previous weight before the illness occurred.

7.    During this same time, the firm took other cost saving measures for economic reasons.  For example, my legal secretary was relieved of her duties as an assistant to me in April, 2006. She actually remained with the firm for two months longer, filling in for other legal secretaries on maternity leave or out on vacation, but left the firm permanently in June, 2006.  Other cost savings realized during this time are set out in the affidavit of the firm's office manager, Amelia Strickland.

8.    I have for some time required Mr. Puckett, and each lawyer in the firm, to provide me with an updated case list each month.  Because Mr. Puckett was frequently late in providing the list, I met with him early in 2006 to make clear that I wanted the list on a timely basis each month. In February 2006, some

of the cases to which Mr. Puckett had been assigned were reassigned, because my review of his case list in early 2006 convinced me that certain of Mr. Puckett's files were not being handled as aggressively as they should have been and that a lawyer should be handling the file. I asked Ms. Strickland to gather those files to organize them, so that they could be reassigned to a lawyer.

9.    After my illness worsened, Mr. Puckett's cases were removed, because I was unavailable to supervise his paralegal work, and because attorneys in the firm were able and available to handle the cases on which Mr. Puckett was working without help from a paralegal.

**Further, affiant sayeth not.**

Julian L. McPhillips, Jr.

Sworn to and subscribed before me this the 26th day of January, 2007.

Notary Public

My Commission Expires: 3/24/07

Exhibit 1

April 28, 2006

TO:        Carroll, Betty and Paul

FROM:      Julian

CC:        Kenneth (after his review)

First, please know that words are totally inadequate to express the high level of my appreciation for your friendship and professional assistance over the years. I am most grateful, and you should know that. I will always remain so.

This is to confirm the communication Kenneth and I had with you, Carroll, yesterday that, because of a reduction of the firm's business and a reduction in what you are doing for the firm, this firm needs to pair down its expenses of operation, and therefore your services are no longer needed. We are taking other measures to reduce expenses as well, in order to survive as a firm.

Please know that this action was only taken after consultation with the other partners in the law, and that the action breaks my heart. I apologize for the necessity of this action.

We do not need the office space you are in, and if you choose, you could remain there for a period of time to be agreed upon separately, without payment of rent and utilities. Your compensation including health insurance and retirement contributions will discontinue as of May 31, 2006.

## AFFIDAVIT OF KENNETH SHINBAUM

Before me, the undersigned Notary Public, on this day personally appeared

**Kenneth Shinbaum**, who first being duly sworn stated the following:

1.  My name is Kenneth Shinbaum.  I am an attorney licensed to practice law
    in the State of Alabama. I am competent to make this affidavit, and this
    affidavit is made upon my personal knowledge.

2.  I am familiar with the complaint against the law firm of McPhillips
    Shinbaum, L.L.P. , Julian L. McPhillips, Jr. ,  Amelia Strickland and myself
    by Carroll W. Puckett, a former employee of McPhillips Shinbaum, L.L.P.

3.  One allegation in the complaint is that I have defamed Mr. Puckett.  I have
    not.  I have never made any statements, either  orally or in writing,  to
    anyone outside the law firm of McPhillips Shinbaum, L.L.P. which
    concerned the character, reputation, and/or professional ability of Mr.
    Carroll Puckett.  I have never made a false statement about him.  Further,
    I do not recall ever making any statement to anyone within the law firm of
    McPhillips Shinbaum, L.L.P. , either orally or in writing, which could be
    considered defamatory with respect to Mr. Carroll Puckett.

4.  Since Mr. Puckett's termination, I have not spoken about his departure
    from the firm, nor the reasons behind the same, with anyone other than

-1-

**EXHIBIT B**

the members of the law firm who had a need to know.

5.    I am also familiar with the allegations contained in Mr. Puckett's complaint regarding disability discrimination. At no time during Mr. Puckett's employment with McPhillips Shinbaum, L.L.P. did he request an accommodation for a disability from which he now claims to suffer. There was no part of his job that he could not perform as a result of losing a kidney, having a stroke or being diagnosed with cancer. Indeed, Mr. Puckett's work ability was essentially the same at the time his employment was terminated as it had been prior to any of the above illnesses.

6.    Furthermore, Mr. Puckett never claimed to have a disability and never suggested that any of his major life activities were substantially limited as a result of any physical or other impairment.

7.    To the extent that Mr. Puckett suffered any temporary impairment as a result of the above illnesses, the firm continued to pay him full salary throughout his recuperation periods, none of which were extended.  Mr. Puckett's had recovered from his last illness almost 1 1/2 years prior to the termination of his employment.

8.    Elizabeth Bern Spear began working for the law firm of McPhillips Shinbaum, L.L.P.  on August 15, 2005, prior to Julian McPhillips' illness, and after she had taken the Alabama Bar Exam. She was employed with the expectation that she would pass the Alabama Bar Exam. This expectation grew out of the knowledge that Ms. Spear was the most outstanding first year student in her class at Jones School of Law and she

-2-

served on Law Review from 2003 to 2005. In fact, Ms. Spear learned that she passed the Alabama Bar Exam on September 30, 2005, again prior to the time of Mr. McPhillips' illness.

9.    I began training Ms. Spear on the Alabama Worker's Compensation Law and on how to handle a worker's compensation case in September, 2005. The firm intended that she would handle these cases on her own without the necessity of another lawyer's participation. With that goal in mind, I provided Ms. Spear the Alabama Worker's Compensation Law and Handbook to read. I also provided an overview of the Alabama Worker's Compensation Law to her, and I answered any legal questions she had as they arose. I also trained Ms. Spear in how to evaluate a worker's compensation case and in how to handle a worker's compensation case from beginning to end.

10.    At the time Mr. Puckett's employment was terminated, Ms. Spear was reaching the point where she was able to try a worker's compensation case by herself. She was also competent to write a trial brief for a worker's compensation case and a proposed order of judgment in a worker's compensation case. At the present time, Ms. Spear is a very good worker's compensation lawyer.

11.    At the time Mr. Puckett's employment was terminated, it was my opinion, that he did not have the ability to draft a trial brief for a worker's compensation case and did not have the ability to draft a proposed order of judgment in a worker's compensation case. It was my opinion that Mr.

-3-

Puckett never had been able to perform either of those tasks at any time during his employment with the law firm, and it was also my opinion that he never would be.  Further, although Mr. Puckett had taken the Alabama Bar Exam a number of times, he had never passed it, and could not, therefore, handle and try a worker's compensation case by himself.  He could only assist an attorney.

12.    Mrs. Spear is not, as Mr. Puckett alleges in his complaint, Jewish, and she never has been Jewish. Her national origin is American.  She was born in the United States as were both of her parents. She was retained with the firm because she is a talented lawyer with wonderful potential.  She has considerably more value to the firm than Mr. Puckett had.

13.    On April 28, 2006, the day Mr. Puckett's employment was terminated, the only other law clerk in our office, other than Mr. Puckett, was Allison Highley. Any other legal assistants in our office at that time were fully capable of performing all legal secretarial duties. Mr. Puckett was not capable of performing the full duties of a legal secretary. Moreover, on April 28, 2006, Mrs. Highley was planning to take the Alabama Bar Exam in July of 2006. On April 28, 2006, Mr. Puckett was not planning on taking the Alabama Bar Exam again. On April 28, 2006, Allison Highley had previously passed the bar exam for the state of Washington. As of April 28, 2006, Mr. Carroll Puckett had never passed a bar exam anywhere and had failed the Alabama Bar Exam on a number of occasions. On April 28, 2006, due to her proven ability as we had observed it, we fully expected

-4-

that Mrs. Highley would pass the Alabama Bar Exam. In fact, Mrs. Allison Highley did receive notice in late September, 2006 that she had passed the Alabama Bar Exam. I knew that once Mrs. Highley passed the bar exam, she would be able to try legal cases without the assistance of another attorney.

14.    As of this date, the law firm of McPhillips Shinbaum, L.L.P. does not employ any legal assistants or law clerks who are not capable of fully performing legal secretarial duties. In fact, every legal assistant presently at McPhillips Shinbaum, L.L.P. is performing the job of a legal secretary.

15.    Mr. Puckett's employment was terminated for economic reasons which existed as of April 28, 2006.  The termination of his employment was only one of other cost saving measures taken by the firm.  The termination of his employment was particularly economical to the firm not only because the services he was  providing could be performed better by other employees, but also because no other legal assistant required the use of secretarial staff.  By terminating Mr. Puckett's employment, the firm was also able to terminate the employment of his part time secretary. No other "legal assistant" with whom Mr. Puckett seeks to compare himself required secretarial assistance.

Further, deponent sayeth not.

Kenneth Shinbaum

Sworn to and subscribed before me this the 17 day of January, 2007.

Notary Public

My Commission Expires: 8/9/2009

**AFFIDAVIT OF AMELIA A. STRICKLAND**

Before me, the undersigned Notary Public, on this day personally appeared

**Amelia A.** Strickland, who first being duly sworn stated the following:

1.    My name is Amelia A. Strickland.  I am the office manager and

bookkeeper of McPhillips Shinbaum, L.L.P., where I have been employed

since November 19, 1996.  I am competent to make this affidavit, and this

affidavit is made upon my personal knowledge.

2.    I am one of the defendants named in the complaint filed by Carroll W.

Puckett against the law firm of McPhillips Shinbaum, L.L.P. and against

Julian L. McPhillips, Jr. , Kenneth Shinbaum, and me.

3.    I have not engaged in any defamation of character against Mr. Puckett. I

have not said or written anything that is untrue about him or that has

otherwise harmed his reputation.

4.    Since Mr. Puckett's termination, I have not spoken about his departure

from the firm, nor the reasons behind the same,  with anyone other than

members of the law firm and my husband, who holds my power of

attorney, and with whom I have a confidential relationship.

5.    Further, the termination of Mr. Puckett's employment had absolutely

nothing to do with his age, sex, national origin, or religion, or with any

-1-

**EXHIBIT C**

claimed disability. Rather, his employment with McPhillips Shinbaum was terminated for economic reasons at a time when the firm had experienced several tight months financially and when Mr. McPhillips' health issues caused the partners of the law firm, including Mr. McPhillips, to become concerned about whether he would be able to return to the firm at all.

6.    Around the middle of February 2006, Mr. McPhillips began feeling badly, and by late February, 2006, he realized that he was developing an illness that interfered with him working in the office on a regular basis. He came into the office less regularly during the month of March, but on March 27, 2006,  it was decided that he would stay home to recover. The partners agreed to continue to operate the firm, with Kenneth Shinbaum assuming the role as the partner in charge.

7.    On April 3, 2006, I met with Mr. McPhillips regarding the financial stability of the firm and the current debts owed by the firm.  I was instructed by Mr. McPhillips to cut out all unnecessary expenses, reduce the monthly overhead costs, focus on paying off the credit line, and to discontinue placing any orders on open accounts. The partners of the law firm concurred.

8.    The following are examples of the steps that were taken to reduce the debt of the firm, and to reduce the overhead expenses as necessary to "keep the doors open" at McPhillips Shinbaum, L.L.P.

A.    By mutual agreement, Sim Pettway, a law clerk with McPhillips Shinbaum, L.L.P., left the firm on March 3, 2006.  This position was

eliminated, and no replacement for Mr. Pettway was sought.

B.    Mr. McPhillips returned $12,149.02 of his own personal draw to pay

for the employees' retirement contribution due on April 15, 2006.

C.    Contracts with the copy machines in the office were redone, saving

the firm approximately $1,300.00 during the months of February

through August 2006.

D.    I discontinued replacing computers in the office.  The previous year

we had spent $6,100.00 on new computer equipment. Instead, the

machines were overhauled by me, and no new equipment was

purchased.

E.    The firm began billing postage to clients, thus reducing our postage

expenses by $1,200.00 over the period February - August 2006.

F.    I renegotiated our contract with ITC Deltacom, and cut our

telephone expenses by $2,100.00 for the period February - August

2006.

G.    The firm eliminated all public relations costs, thus saving the firm

$38,000.00 for the period February - August 2006.

H.    Allison Highley, who had already passed the state of Washington's

Bar exam and who had the skills of a lawyer, had her salary

reduced by $5,000.00, down to $30,000 annually. (As anticipated,

Allison Highley subsequently passed the Alabama Bar the first time

she took it in July 2006.) No raises were given to anyone between

February and July 31, 2006, despite that several employees were

-3-

due for raises during that time.

I.      All repairs and maintenance on the building were stopped. The firm saved approximately $12,000.00 from the prior year's expenses.

J.      The firm eliminated reimbursement for non-case related travel, for all entertainment and CLE expenses and for professional dues.

K.      Mr. McPhillips agreed that rents normally payable to him stop while he was out of the office due to his illness.

L.      I eliminated approximately $4,800.00 worth of legal and professional expenses for the period February - August 2006.

M.      I eliminated $8,250.00 worth of miscellaneous expenses spent February - August 2005 from 2006.

N.      Mr. McPhillips' legal secretary was relieved of her duties with him in April 2006, and after filling in for other staff on maternity or vacation leave, left the firm in June 2006. It was not until October 30, 2006, that Mr. McPhillips hired another full time secretary for himself.

O.      The employment of Carroll Puckett and his part time secretary, Betty Puckett, was terminated on April 28, 2006, although they were paid through May 31, 2006. Neither of their positions was refilled. Mr. Puckett's law clerk work had been performed primarily with, and under the supervision of, Mr. McPhillips. He was paid $44,000 per year for that work. He was also paid $18,000 for accounting work, which the firm did not need because I could do the work for the same money I received as office manager and

-4-

bookkeeper.  Finally, he was paid $8,000 for building management, which the firm also did not need because I could also perform the very little work that involved in my capacity as office manager.  The compensation paid to Mr. Puckett, as set out above, does not include bonuses or other costs related to his employment.  Mr. Puckett's part time secretary cost the firm $10,000, plus other employment related expense.

9.    In addition, we did not replace the two attorneys who left McPhillips Shinbaum, L.L.P. in August and September of 2006. Further, those attorneys' secretarial positions were eliminated.  Elizabeth Spear, who was already a lawyer at the time Mr. Puckett's employment was terminated, was making $40,000 annually.

10.    Due to Mr. McPhillips' absence from the firm from March through August 1, 2006, the income of the firm suffered.  The firm realized approximately 26% less in attorney fees than it did for the same period in the prior year of 2005. The firm's profit and loss statement reflected a 35.5% drop from 2005's profit and loss for the same period, down from $573,867.51 in 2005 to $370,653.50  in 2006.   Mr. McPhillips, personally, brought in only $19,186.82 during the 6 month period, compared to the  $222,192.86 he had brought in during the same period in 2005.

11.    In addition, because Mr. McPhillips was no longer seeing clients during the months of April, May, June and July, and not taking on any new cases, Mr. McPhillips' cases were divided among the other attorneys in

-5-

the firm. Also, because Mr. Puckett worked as a paralegal primarily with Mr. McPhillips, and since Mr. McPhillips was not available, the cases on which Mr. Puckett was working were assigned to attorneys in the firm who felt they could handle the cases, without help from a paralegal.

12.    In fact, because of a shortage of clients calling in, and new cases taken by the firm, the attorneys took over all cases previously worked on by non-attorneys in the firm. This included not only cases on which Mr. Puckett had worked, but also cases on which Sim Pettway had worked, and on which people who performed both paralegal and secretarial duties had worked.

13.    In essence, the firm decided that it would have no employees whose sole duties were paralegal or law clerk duties. The only people retained by McPhillips Shinbaum who had done any paralegal work (other than Allison Highley who the firm expected to pass the Alabama Bar, and who has done so) were the legal assistants named in the complaint who were also able to perform secretarial duties for the attorneys. Every one of these legal assistants named in Mr. Puckett's complaint who is still with the firm does in fact do secretarial work for lawyers in the firm. At the time Mr. Puckett's employment was terminated, the highest paid such legal assistant / secretary made $32,000 annually. When one of these women is absent from work, I often help out by performing secretarial work. Mr. Puckett did not have the skills necessary to perform secretarial duties for the attorneys.

-6-

14. At no time during Mr. Puckett's employment did he ask me for an accommodation due to any disability he might now claim to have.

15. Mr. Puckett refers in his complaint to the removal of his name plate from his door. The removal of the name plate had nothing to do with Mr. Puckett. The referenced door led to the office not only of Mr. Puckett, but also to Mr. Shinbaum's secretary. Mr. Puckett had another door directly off the second floor hallway that led to his office and his own part time secretary's office. My best estimate is that approximately 95% of the clients coming to see Mr. Puckett used that hallway door. By eliminating his name plate from the door leading to Mr. Shinbaum's secretary's office, therefore, the firm intended to prevent clients from wandering aimlessly into her office.

16. Each month, every attorney in the office, as well as Mr. Puckett, were required to provide Mr. McPhillips an updated case list. Mr. Puckett was often late in fulfilling this obligation. At the beginning of 2006, Mr. McPhillips wanted to make sure he received an updated case list each month from Mr. Puckett. He met with Mr. Puckett to tell him that he expected to receive the updated list on a timely basis each month. After Mr. McPhillips reviewed Mr. Puckett's case list, he determined that certain cases assigned to Mr. Puckett had not received enough attention and should be handled by a lawyer. I made a list of those files from the case list, and asked Mr. Puckett for the same, so that the files could be organized. Secretary Donna Puckett and I removed the designated files

-7-

from Mr. Puckett's office, but only after he gathered them for us. Nothing with respect to these files had anything to do with Mr. Puckett's age, sex, religion, national origin, alleged disability or anything else other than the functioning of the firm.

17.    At no time during Mr. Puckett's employment with McPhillips Shinbaum, L.L.P. did he complain to me that he believed he was experiencing discrimination.

Further, affiant sayeth not.

Amelia A. Strickland

Sworn to and subscribed before me this the 24th day of January 2007.

Notary Public

My Commission Expires: 5/24/07

-8-