IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CARROLL W. PUCKETT, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| vs. | )    Case No. 1:06-cv-1148-WKN |
| | ) |
| MCPHILLIPS SHINBAUM, LLP; | ) |
| JULIAN MCPHILLIPS; KENNETH | ) |
| SHINBAUM; AND AMELIA STRICKLAND, | ) |
| | ) |
|    Defendants. | ) |

**BRIEF IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT**

**I. INTRODUCTION**

Plaintiff alleges that his employment was terminated as a result of discrimination based on his age, disability, national origin, and sex. He also alleges a hostile work environment and retaliation (Complaint, p. 2). Finally, he alleges two state law claims for defamation and fraud. All claims made by plaintiff either fail to state a cause of action upon which relief could be granted, or, based on the undisputed facts, summary judgment should be granted.

**II. STATEMENT OF UNDISPUTED FACTS**

Plaintiff Puckett alleges that he was at all material times an employee of the law firm, now known as McPhillips Shinbaum LLP ("the firm") (Complaint, para. 10). No allegation is made that plaintiff was employed by any other defendant. Although there were some concerns about Mr. Puckett's work (McPhillips Affidavit, para 8; Shinbaum Affidavit, para. 11), his employment was terminated for economic reasons (McPhillips Affidavit, para 5 ; Shinbaum Affidavit, para 15; Strickland Affidavit, para 5). Given the financially tight times the firm was

experiencing, the firm determined that it could no longer afford a position for anyone who performed only law clerk or paralegal duties and who was not expected ever to pass the Alabama Bar exam (Strickland Affidavit, para 11-12). In the same way, the firm determined that in its financially difficult position, it did not need the accounting or building management work also performed by Mr. Puckett (Strickland Affidavit, para 8O). Mr. Puckett's entire compensation consisted of $44,000 annually for law clerk/paralegal duties, $18,000 annually for accounting work, and $8,000 annually for building management (Strickland Affidavit, para 8O). These accounting and building management duties were taken over by Strickland as part of her responsibilities as office manager and bookkeeper for the firm (Strickland Affidavit, para 8O).

    The affidavit of defendant Strickland sets out details concerning the firm's drop off in business, the reason for the drop off, and the steps taken by the firm to cut costs during this period of time (Strickland Affidavit, para 6 - 12 ). Essentially, the firm's losses were caused by McPhillips' illness (Strickland Affidavit, para 6, 9). In mid-February 2006, McPhillips began to feel poorly, and matters deteriorated to the point that in March he stopped coming to the office other than sporadically, and he did very little legal work (Strickland Affidavit, para 6, 9; McPhillips Affidavit, para 5 - 6).

    Losses suffered by the firm during the period of McPhillips' illness (mid-February through mid-October 2006) were significant (McPhillips Affidavit, para 6; Strickland Affidavit, para 9), and a variety of cost saving measures were undertaken (Strickland Affidavit, para 8). These included the elimination of the law clerk position filled by Sim Pettway who left the firm by mutual agreement on March 3, 2006, and who was the only person besides plaintiff who was qualified to perform solely law clerk duties (Strickland Affidavit, para 8A); the reduction in

salary of another law clerk who already had passed the Bar of another State and who was expected to pass, and has now passed, the Alabama Bar (Strickland Affidavit, para 8H and 12; Shinbaum Affidavit, para 13);  the elimination of two lawyer positions (Strickland Affidavit, para 8O and P); the elimination of public relations costs (Strickland Affidavit, para 8G); the elimination of reimbursement to lawyers for non-case related travel, for CLE expenses and for professional dues (Strickland Affidavit, para 8J); the elimination of other staff positions (Strickland Affidavit, para 8N and O); the forgiveness by McPhillips of certain rents due from the firm for the lease of office space (Strickland Affidavit, para 8K); the retrieval from McPhillips of over $12,000 of his personal draw to pay the firm's contribution to employees' retirement (Strickland Affidavit, para 8B); and other measures that resulted in savings of another $35,000 (Strickland Affidavit, para 8C,D,E,F,I,L, and M).

The elimination of Mr. Puckett's position was a savings to the firm of $70,000, plus other employment related costs. (Strickland Affidavit, para 8O).  In addition, by eliminating Mr. Puckett's position, the firm was also able to save $10,000 paid to a part time secretary who did work for Mr. Puckett (Strickland Affidavit, para 8O).

As a basis for his complaint's allegation of discrimination, Mr. Puckett seeks to compare himself to a number of women employees of the firm (Complaint, para 15, 16, 20, and 21).  He contends first that the firm's retention of Elizabeth Spear, rather than him, constituted national origin, sex and age discrimination.  Ms. Spear is not, as Mr. Puckett contends, Jewish, and she was born and raised in the United States (Shinbaum Affidavit, para 12).  Furthermore, at the time of the termination of plaintiff's employment, Ms. Spear was a lawyer (Shinbaum Affidavit, para 8), and she could do many things for the firm that Mr. Puckett, a non-lawyer, could not do

(Shinbaum Affidavit, para 10 and 11). Finally, although Ms. Spear could do considerably more for the firm than Mr. Puckett could do, her salary was less than his, and terminating her employment would have resulted in less savings for the firm (Strickland Affidavit, para 8O and 9).

In connection with his claim of sex and age discrimination, Mr. Puckett also seeks to compare himself to Allison Highley (Complaint, para 15). Yet, at the time of the termination of Mr. Puckett's employment, Ms. Highley already had passed the Bar of the State of Washington and was scheduled to take, and based on her job performance was fully expected by the firm to pass, the Alabama Bar in 3 months (Shinbaum Affidavit, para 13; Strickland Affidavit, para 12). Although Mr. Puckett had taken the Alabama Bar exam a number of times prior to the termination of his employment, he had never passed it, and it was not anticipated that he would ever become a lawyer (Shinbaum Affidavit, para 13). Ms. Highley did pass the July 2006 Bar exam (Shinbaum Affidavit, para 13). Although Ms. Highley was more valuable to the firm in April of 2006 than Mr. Carroll was, terminating her employment would have resulted in less savings to the firm (Strickland Affidavit, para 8H).

Also with respect to age and sex discrimination, Mr. Puckett seeks to compare himself with Jennifer Lee, Page McKee, Sharon Duke, Suzanne Clemens, Donna Puckett, Tia Wilkinson, Patricia Williams, and defendant Amelia Strickland (Complaint, para 16). Yet, at the time of the termination of Mr. Puckett's employment, each of these women employees was fully capable of performing all the duties of a legal secretary for an attorney (Strickland Affidavit, para 12; Shinbaum Affidavit, para 13), and all of these women who are still with the firm are in fact performing legal secretarial work for lawyers in the firm (Strickland Affidavit, para 13). Mr.

Puckett not only was not capable of performing the full duties of a legal secretary for an attorney (Strickland Affidavit, para 12; Shinbaum Affidavit, para 13), but also he used the services of a part time secretary (Strickland Affidavit, para 8O).  Moreover, terminating the employment of neither Lee, McKee, Duke, Clemens, Wilkinson, nor Williams would have resulted in as much savings as eliminating Mr. Puckett's position (Strickland Affidavit, para 13).

The employment of one of the women named by plaintiff in his complaint, Donna Puckett, was terminated because she was serving as legal secretary to McPhillips, and there was no need for her services during the time McPhillips was ill (McPhillips Affidavit, para 7; Strickland Affidavit, para 8 N).  Another of the women named by Mr. Puckett, i.e., defendant Stickland, is the firm's office manager who obviously performed duties very different from those performed by Mr. Puckett (Strickland Affidavit, para 1).  In addition to her duties as office manager and bookkeeper, Ms. Strickland also performed, and still performs, secretarial duties for lawyers in the firm when the need arises (Strickland Affidavit, para 13).  None of the women (other than arguably Allison Highley) named by Mr. Puckett served in the same law clerk/paralegal capacity in which he served (Shinbaum Affidavit, para 13).  Indeed, the firm now has no law clerk positions (Shinbaum Affidavit, para 13; Strickland Affidavit, para 8 A), and has no one performing paralegal duties who is not capable of performing the full duties of a legal secretary (Strickland Affidavit, para 12).

Finally with respect to age and sex discrimination, Mr. Puckett's position was eliminated, and no one was hired to replace him (Strickland Affidavit, para 8O and 12).

As for disability discrimination, Mr. Puckett never at any time claimed to have a disability or suggested that any of his major life activities were substantially limited as a result of

any physical or other impairment (Shinbaum Affidavit, para 6). He never asked for an accommodation for a disability (Shinbaum Affidavit, para 5; Strickland Affidavit, para 13). Although Mr. Puckett lost a kidney in 2002, had a stroke in 2003 and was diagnosed with prostate cancer in 2005 (Complaint, para 21-22), those illnesses did not prevent him from performing any part of his job (Shinbaum Affidavit, para 5). Indeed, Mr. Puckett's work ability was essentially the same at the time his employment was terminated as it had been prior to any of his illnesses (Shinbaum Affidavit, para 5). To the knowledge of the firm, Mr. Puckett had recovered from his last illness almost 1 ½ years prior to the termination of his employment (Shinbaum Affidavit, para 7).

As to plaintiff's claim of retaliation for his reporting of alleged discrimination as set out in Count V of the complaint, the undisputed facts show that Mr. Puckett filed his claim of discrimination in July of 2006, well after his employment had already been terminated (Complaint, Exhibit "A").

Contrary to what is alleged in the complaint, no defendant has made untrue statements about Mr. Puckett (McPhillips Affidavit, para 3 - 4; Strickland Affidavit, para 3 - 4; Shinbaum Affidavit, para 3 - 4).

**ARGUMENT**

I.    **The Federal Claims**

    A.    **There is no relief available under Title VII, ADA, or ADEA against the named individuals**.

Relief under Title VII, the ADA and the ADEA is limited to the employer and is not available against individual employees or others. See Smith v. Lomax, 45 F.3d 402, 403 n. 4

(11th Cir.1995) (Individuals "cannot be held liable under the ADEA or Title VII."); Mason v. Stallings, 82 F.3d 1007 (11th Cir. 1996) (Individuals not liable under the ADA).  To the extent that Mr. Puckett has filed Title VII, ADA, and ADEA claims against the three individual defendants, none of whom were his employer  (Complaint Par. 10 (law firm was his employer)), his claims are due to be dismissed.

      **B.**     **Mr. Puckett has failed to establish a *prima facie* case of discrimination under Title VII, the ADA or the ADEA**

Plaintiff complains that he was discriminated against in violation of Title VII, 42 U.S.C. § 2000e-2(a) (Title VII), on the basis of his sex and national origin. A plaintiff in a termination case can establish a *prima facie* case by showing that: (1) he is a member of a protected class; (2) he was subject to an adverse employment action; (3) he was qualified for the position held; (4) and he was replaced or treated less favorably than someone similarly situated outside of his protected class. Knight v. Baptist Hosp. of Miami, Inc., 330 F.3d 1313, 1316 (11th Cir.2003). "To show that employees are similarly situated, the plaintiff must show that the employees are similarly situated in all relevant respects ...." Knight, 330 F.3d at 1316.

Mr. Puckett also contends that he was discriminated against in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. Sec. 630.  In an ADEA case involving discharge, a plaintiff may establish a *prima facie* case by showing: (1) that he was a member of the protected group of persons; (2) that he was subject to adverse employment action; (3) that a substantially younger person filled the position from which he was discharged; and (4) that he was qualified to do the job from which he was terminated. See O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 313, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996) (stating that an

ADEA plaintiff must show that he was replaced by someone "substantially younger," not necessarily by someone under age 40); Jameson v. Arrow Co., 75 F.3d 1528, 1531 (11th Cir.1996) (listing elements of *prima facie* case).

Puckett similarly contends that he was discriminated against in violation of the Americans with Disability Act (ADA) 29 U.S.C. Sec 12101 et seq . To prove discrimination under the ADA, a "plaintiff must show that: (1) he was disabled; (2) he was a 'qualified individual' at the relevant time, meaning he could perform the essential functions of the job in question with or without reasonable accommodations; and (3) he was discriminated against because of his disability." Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1255 (11th Cir.2001).

Mr. Puckett cannot prevail on his Title VII or ADEA claims because he was not replaced, nor was he treated differently from anyone who was similarly situated. The firm, having terminated Puckett as a cost-cutting measure, did not replace him. (Strickland Affidavit, para 8 O and 12).  There are no law clerk/paralegal positions at McPhillips Shinbaum now. (Shinbaum Affidavit, para 13; Strickland Affidavit, para 8 A), so that he was not  treated less favorably than someone similarly situated outside of his protected class.

As noted in the statement of facts, Puckett was not expected to pass the bar exam, and, thus, he was not expected to become an attorney. (Strickland Affidavit, para 11-12). With respect to the "legal assistants" with whom Puckett sought to compare himself, each of them performed the work of a legal secretary for an attorney, along with some paralegal work.  As compared to these "legal assistants", Mr. Puckett was the only person performing paralegal work who did not also do secretarial work for lawyers at the firm. (Strickland Affidavit, para 12-13; Shinbaum Affidavit, para 13) Accordingly, all of the people with whom Mr. Puckett compares himself in

the Complaint were either law school graduates who had passed, or were expected to pass, a bar exam at the time of Puckett's termination, or they were employees who served a dual role as a secretary also doing paralegal work, or, in the case of Amy Strickland, the dual role of office manager and legal secretary. (Strickland Affidavit, paras 1 & 13).

In short, Puckett cannot make a *prima facie* Title VII or ADEA claim because he cannot show that there was any person similarly situated who was not terminated. Nor can he show that he was replaced by anyone.

> C. **Mr. Puckett has failed to make a *prima facie* case for national origin discrimination because Ms. Spear is not of a different national origin**.

Mr. Puckett claims that he was discriminated against on the basis of national origin because he was terminated instead of Ms. Spear. Ms. Spear is not, as Mr. Puckett contends, Jewish. (Shinbaum Affidavit, para. 12). Even if she were, Mr. Puckett can point to no authority for the proposition that the characteristic of being Jewish indicates national origin. In Espinoza v. Farah Mfg. Co., 414 U.S. 86 (1973), the Supreme Court held that "national origin" as used in the employment discrimination context refers to the country of one's birth or that of one's ancestors. Being Jewish gives no indication of an individual's country of origin, nor does it indicate the country of origin of one's ancestors or suggest the physical or cultural characteristics of a national origin group. Indeed, Jews, like members of other religions, hail from a variety of different countries. Because Ms. Spear was born and raised in the United States (Shinbaum Affidavit, para 12), there are no grounds on which to base a national origin discrimination claim.

Even if being Jewish did amount to a "national origin," Mr. Puckett would lose this claim because Ms. Spear is not Jewish. (Shinbaum Affidavit, para 12)

**D.     Mr. Puckett cannot make out a *prima facie* case of discrimination under the ADA because he is not disabled as that term is defined under the ADA nor was he regarded as disabled.**

The ADA prohibits discrimination against individuals with "disability," defined in § 12102(2)(A), as an actual physical impairment that substantially limits a major life activity. The ADA also prohibits discrimination against employees who are "regarded as having such an impairment." See § 12102(2)C). The term "major life activities " is defined as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). The term "substantially limits" is defined as follows:

> (i) Unable to perform a major life activity that the average person in the general population can perform; or
>
> (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1).

None of the physical conditions Puckett had limited any major life activity as of the time of the termination of his employment. Nor did McPhillips Shinbaum regard Puckett as having an impairment. Although Mr. Puckett lost a kidney in 2002, had a stroke in 2003 and was diagnosed with prostate cancer in 2005 (Complaint, para 21-22), those illnesses did not prevent him from performing any part of his job (Shinbaum Affidavit, para 5). Indeed, Mr. Puckett's work ability was essentially the same at the time his employment was terminated as it had been

prior to any of his illnesses (Shinbaum Affidavit, para 5). To the knowledge of the firm, Mr. Puckett had recovered from his last illness almost 1 ½ years prior to the termination of his employment (Shinbaum Affidavit, para 7).

  **E.** **Even if Mr. Puckett could establish a *prima facie* case under Title VII, the ADA or the ADEA, he cannot show that the legitimate nondiscriminatory reason for his termination was pretextual.**

  A *prima facie* case of discrimination raises the inference that discriminatory intent motivated the adverse employment action. The employer may rebut this inference by "clearly articulating in a reasonably specific manner a legitimate non-discriminatory reason" for the adverse action. Conner v. Fort Gordon Bus Co., 761 F.2d 1495, 1499 (11th Cir.1985). "The heart of the pretext inquiry is not whether the employee agrees with the reasons that the employer gives for the discharge, but whether the employer really was motivated by those reasons." Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1333 (11th Cir.1998). Once the employer satisfies this burden of production, the plaintiff then has the burden of persuading the court that the proffered reason is a pretext for the true discriminatory reason. "If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim." Chapman v. AI Transp., 229 F.3d 1012, 1024, 1025 (11th Cir.2000) ( en banc ).

  As noted above, Mr. Puckett cannot make a *prima facie* case of discrimination under Title VII (gender or national origin), the ADA, or the ADEA, but, even if he could, he cannot show that the legitimate non-discriminatory reason for his termination was pretextual. The

indisputable facts show that Mr. Puckett's termination came at a time during which the McPhillips Shinbaum law firm was experiencing financial difficulties and was cutting expenses substantially. (Strickland Affidavit, para 6 - 12; McPhillips Affidavit, para 5 - 6 ).   Mr. Puckett's salary was $70,000, and his entire compensation consisted of $44,000 annually for law clerk/paralegal duties, $18,000 annually for accounting work, and $8,000 annually for building management (Strickland Affidavit, para 8O).  The firm determined that in its financially difficult position, it did not need the accounting or building management work performed by Mr. Puckett (Strickland Affidavit, para 8O).  These accounting and building management duties were taken over by Strickland as part of her responsibilities as office manager and bookkeeper for the firm, i.e., at no extra cost to the firm. (Strickland Affidavit, Para 8O).

     Mr. Puckett's salary of $70,000 (and even the $44,000 portion of that which he was receiving for law clerk/paralegal duties) was higher than the salaries of the two lawyers with whom he compared himself, Ms. Highley (who, at the time of Mr. Puckett's termination was receiving a salary of $30,000, reduced from $35,000 because of the financial difficulties, (Strickland Affidavit, para 8H)) and Ms. Spear (who was receiving a salary of $40,000 at that time (Strickland Affidavit, para 8O).  Yet, he was of less value to the firm than either of them at the time of his dismissal because Spear had passed the bar and was able to represent clients on her own and act as a full lawyer.  Highley had passed the bar in Washington State (and could therefore be admitted *pro hac vice*) and was fully expected to pass the bar in Alabama (and she did). (Shinbaum Affidavit, para 13; Strickland Affidavit, para 12). Likewise the salary of each of the secretarial/legal assistant staff were lower than Mr. Puckett's salary (Strickland Affidavit, para 13), and those staff members, as noted above, were also able to do secretarial work.

**F.    Mr. Puckett cannot prevail on his claim for retaliation for reporting discrimination because he reported discrimination after he was terminated.**

Mr. Puckett was terminated on April 28, 2006. (Strickland Affidavit, para 8O). His first report of discrimination was his EEOC complaint, which was filed in July 2006. To establish a *prima facie* case of retaliation, a plaintiff must show: (1) he engaged in protected activity; (2) his employer was aware of that activity; (3) he suffered an adverse employment action; and (4) the action was causally related to the protected activity. See Maniccia v. Brown,171 F.3d 1364, 1367 (11th Cir.1999). Because of the sequence of events, Mr. Puckett cannot show that his termination was causally related to his complaint of discrimination.

**G.    Mr. Puckett cannot prevail on his hostile work environment claim**

"A hostile work environment claim under Title VII is established upon proof that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir.2002) (quoting Harris, 510 U.S. at 21, 114 S.Ct. at 370) (quotation marks omitted). Title VII is not meant to serve as "a general civility code." See Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80, 118 S.Ct. 998, 1002, 140 L.Ed.2d 201 (1998). In order to prevail on a hostile work environment claim, a plaintiff must establish that: (1) "he belongs to a protected group;" (2) "he has been subject to unwelcome harassment;" (3) "the harassment [was] based on a protected characteristic of the employee;" (4) "the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment;" and (5) "the employer is responsible for such environment under either a theory

of vicarious or direct liability." Miller, 277 F.3d at 1275.

The fourth element of the hostile work environment test contains both a subjective and an objective component. Mendoza v. Borden, Inc., 195 F.3d 1238, 1246 (11th Cir.1999) ( *en banc* ). To satisfy the fourth element, the employee must "subjectively perceive" the harassment as severe and pervasive enough to change the terms or conditions of employment, and the district court must find that this perception was objectively reasonable. Id.

In making this objective determination, the following factors should be considered: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." Id. The Supreme Court has noted that "teasing, offhand comments, and isolated incidents" do not constitute discriminatory changes in the terms and conditions of employment. Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S.Ct. 2275, 2284, 141 L.Ed.2d 662 (1998) (citation omitted).

Puckett's hostile work environment claim is based on the following allegations: (1) his name plate was removed from his office entrance; (2) files were removed from his office without his permission and assigned to lawyers; (3) he was embarrassed in front of clients (no specific allegations given); and (4) water damage to his office was not repaired.

These allegations, even if true, do not arise to harassment or hostile work environment based on sex or national origin[1], particularly under these circumstances, even if the actions

---

[1]His hostile work environment claim is brought only under Title VII.

allegedly taken were unpleasant to him. The allegations of the removal of his name plate[2], the failure to repair water damage to his office, the removal of files from his office and reassignment of work[3], and the unspecific allegation that he was embarrassed in front of clients, even taken together, do not establish that "the workplace [wa]s permeated with discriminatory intimidation, ridicule, and insult, that [wa]s sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Miller at 1275. In short, the allegations, even if taken as true, to do not support a claim for hostile work environment.

Moreover, Mr. Puckett could not show that any of these actions were taken because of his gender or his national origin. The allegations related to the hostile work environment claim were taken by other men who were of the same national origin as he.

## II.    Mr. Puckett's state law claims

### A.    The state law claims may be dismissed if all federal claims are dismissed.

When a district court dismisses all of the federal claims before trial, the decision whether or not to exercise pendent jurisdiction over state-law claims is within its discretion. Tinker v. DeMaria Porsche-Audi, Inc., 632 F.2d 520, 523 (5th Cir. Unit B, 1980). A district court can

---

[2]The name plate removal is easily explainable, for instance, as set out in Amy Strickland's affidavit: "Mr. Puckett refers in his complaint to the removal of his name plate from his door. The removal of the name plate had nothing to do with Mr. Puckett. The referenced door led to the office not only of Mr. Puckett, but also to Mr. Shinbaum's secretary. Mr. Puckett had another door directly off the second floor hallway that led to his office and his own part time secretary's office. My best estimate is that approximately 95% of the clients coming to see Mr. Puckett used that hallway door. By eliminating his name plate from the door leading to Mr. Shinbaum's secretary's office, therefore, the firm intended to prevent clients from wandering aimlessly into her office." (Strickland Affidavit para 15).

[3]The reassignment of cases that occurred prior to Mr. McPhillip's illness was the result of a review of Mr. Puckett's case list by Mr. McPhillips who reassigned the files to lawyers in the office so that they would be handled more aggressively. (McPhillips Affidavit para 8).

abuse its discretion under these circumstances only by dismissing the pendent claims when no state forum is available. Ray v. Tennessee Valley Authority, 677 F.2d 818 (11th Cir.1982). The Plaintiff in this case has a state forum available. Thus, it is well within this court's discretion to dismiss the state law claims if the federal claims are dismissed.

### B.    Mr. Puckett cannot prevail on his defamation claim

To establish a *prima facie* case of defamation, a plaintiff must show:

> "[1] that the defendant was at least negligent [2] in publishing [3] a false and defamatory statement to another [4] concerning the plaintiff, [5] which is either actionable without having to prove special harm (actionable per se) or actionable upon allegations and proof of special harm (actionable per quod)."

Delta Health Group, Inc. v. Stafford, 887 So.2d 887, 891 (Ala.2004)(quoting Nelson v. Lapeyrouse Grain Corp., 534 So.2d 1085, 1091 (Ala.1988) (citations omitted)).

None of the defendants have made any untrue statements about Mr. Puckett. Each of the individual Defendants have filed affidavits to this effect. Moreover, Mr. Puckett does not in his complaint allege the substance of any allegedly false statement, nor allege to whom any such false statement was published. Thus, this claim is due to be dismissed.

### C.    Mr. Puckett's fraud claim is due to be dismissed.

First, Mr. Puckett failed to state his fraud claim with specificity in the fraud count of his complaint. Thus, his fraud claim is due to be dismissed pursuant to Rule 9 of the Federal Rules of Civil Procedure 9(b).

Reading the allegations in the Complaint closely, Mr. Puckett's fraud claim is actually, at most, a claim for promissory fraud because he alleges that Mr. McPhillips made a promise to act

or not to act in the future. See Padgett v. Hughes, 535 So.2d 140, 142 (Ala.1988) (a claim of promissory fraud is "one based upon a promise to act or not to act in the future").

The elements of fraud are (1) a false representation (2) of a material existing fact (3) reasonably relied upon by the plaintiff (4) who suffered damage as a proximate consequence of the misrepresentation. To prevail on a promissory fraud claim two additional elements must be satisfied: (5) proof that at the time of the misrepresentation, the defendant had the intention not to perform the act promised, and (6) proof that the defendant had an intent to deceive. Id.  Mr. Puckett alleges neither of the additional elements necessary to prove a claim of promissory fraud.  On that basis alone, this count of the complaint is due to be dismissed.  Moreover, because Mr. Puckett's job was terminated as a result of financial difficulties at the McPhillips Shinbaum law firm, it is clear that Mr. Puckett cannot in good faith allege facts necessary to prove the elements of a promissory fraud claim.

    Respectfully submitted,

    s/Robert D. Segall
    Robert D. Segall (SEG003)
    Shannon L. Holliday (HOL088)
    Copeland, Franco, Screws & Gill, P.A.
    Post Office Box 347
    Montgomery, AL 36101-0347
    Phone: 334-834-1180
    Fax: 334-834-3172
    email: segall@copelandfranco.com
    email: holliday@copelandfranco.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

      I certify that on this 29th day of January, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and have mailed by United States Postal Service the document to the following non-CM/ECF participants:

      George E. Jones, III, Esq.
      711 Alabama Avenue
      Selma, AL 36701
      Phone: 334-874-6618

                              s/Robert D. Segall
                              Of Counsel