IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED
2007 MAY 31  P 3: 29

| | |
|---|---|
| CARROLL W. PUCKETT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CIVIL ACTION NO. |
| ) | 2:06-cv-1148-ID |
| McPHILLIPS SHINBAUM, et al., ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S MOTION FOR LEAVE OF COURT TO FILE ADDITIONAL
COUNTER-AFFIDAVIT IN OPPOSITION TO SUMMARY JUDGMENT**

COMES NOW THE PLAINTIFF, by and through his undersigned counsel of record, and respectfully moves this Honorable Court for leave to file additional evidentiary material in opposition to DEFENDANTS' pending Motion for Summary Judgment: THE AFFIDAVIT OF PAUL PUCKETT, which is attached hereto.

Respectfully submitted this the _31_ day of May, 2007.

*[signature]*
GEORGE E. JONES, III
Ala. Bar I.D. ASB-9546-S82G
Attorney for the Plaintiff

ADDRESS OF COUNSEL:
GEORGE E. JONES, III
ATTORNEY AND COUNSELOR AT LAW
711 Alabama Avenue
P. O. Box 9
Selma, Alabama 36702-0009
(334) 874-6617

## CERTIFICATE OF SERVICE

I hereby certify that I have this the **31** day of May, 2007, served a copy of the foregoing by placing same in the United States Mail, postage prepaid and addressed to:

>Robert D. Segall, Esquire
>COPELAND, FRANCO, SCREWS & GILL, PC
>P. O. Box 347
>Montgomery, Alabama 36101-0347
>
>Shannon L. Holliday, Esquire
>COPELAND, FRANCO, SCREWS & GILL, PC
>P. O. Box 347
>Montgomery, Alabama 36101-0347

*[signature]*
OF COUNSEL

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CARROLL W. PUCKETT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CIVIL ACTION NO. |
| | ) 2:06-cv-1148-ID |
| McPHILLIPS SHAINBAUM, et al., | ) |
| | ) |
| Defendants. | ) |

## AFFIDAVIT OF PAUL L. PUCKETT

I, PAUL L. PUCKETT, do declare and state as follows:

1. Beginning in 1993 through May 2006, I worked and provided a number of services for Julian McPhillips, McPhillips Shinbaum, LLP, Fitzgerald Museum, McPhillips for U.S. Senate, McPhillips and McPhillips, and other entities Mr. McPhillips was involved in. To be more specific, during this time period I was involved in preparation of personal income taxes for Mr. McPhillips; preparation of Federal and State returns and forms (e.g. 940, 941, UC-CR, W-2, W-3, 1099, 96, 1096, 5500) for McPhillips Shinbaum LLP and Fitzgerald Museum; Preparation of financial documents for McPhillips for U.S. Senate; Audit of retirement qualification, sick and vacation time for McPhillips Shinbaum LLP employees, Maintained memos and exhibits for updating McPhillips Shinbaum LLP Employee Personnel Handbook, Maintaining employee files for McPhillips Shinbaum LLP employees; Payroll generation for McPhillips Shinbaum LLP and Fitzgerald Museum employees; Paralegal for various cases (in particular real estate or construction related); Preparation of certain reports using McPhillips Shinbaum LLP financial software, Requesting Professional Liability quotes; Consultant on construction related matters; and a number of other general activities related to the financial and employee operations within McPhillips Shinbaum LLP. I also mention that any work, other than bonuses from Mr. McPhillips, which Carroll Puckett, Betty Puckett or Paul Puckett performed, was at a cost of $80,000 annually (see Amy Strickland's first affidavit, para 8, which only describes Carroll and Betty Puckett and not me).

2. I have personal knowledge of the matters stated herein and if called as a witness I could and would testify to them competently.

1

Case Lists
3. I assisted Carroll Puckett with case list reviews with Julian McPhillips from time to time beginning February 2002 through April 2006. I was familiar with the individual case lists (and consolidated case lists for the entire firm) and had access to the same. Amy Strickland told me that Kenneth Shinbaum was the worst one to get his case list in and he also had the sloppiest office and files. I read Julian McPhillip's affidavit, para 8, and Amy Strickland's first affidavit, para 16, and can tell you it's an inconsistent singling out of Carroll (and that memo's exist regarding attorneys who were late with lists).

Allison Highley's Hiring
4. I was in a position that required being familiar with financial and other information related to employees, junior partners and senior partners, and thus my knowledge of the foregoing. Amy Strickland discussed Allison with me immediately after her interview, including presenting her resume to me and telling me that Allison wanted to be hired as a paralegal and would be here (in Montgomery) for one year (while her husband was stationed at Maxwell AFB). At the point of hire, there was no expectation that Allison would sit for the Alabama Bar Exam.

Elizabeth Spear
5. My office was adjacent to Carroll Puckett's office (see diagram below) and was often aware who might be in Carroll's office. I had taken lawsuit drafts to/from Carroll's office to Elizabeth's office and to/from Julian's office for both Carroll and Elizabeth. I was witness to conversation between Carroll and Elizabeth regarding how to handle certain cases (which involves training). I have read Kenneth Shinbaum's affidavit, para 8-9, and what I witnessed is inconsistent with his assertions that he exclusively trained Elizabeth.

Why Doesn't Carroll Retire
6. In early 2006 Julian and Amy asked me to come down to Amy's office wherein they both asked me if I could get Carroll to retire. This is inconsistent with Amy Strickland's second affidavit, para 9, which states that she never did anything to suggest that Mr. Puckett retire.

Case Files Removed
7. Carroll told me that he had been around a long time and worked on employment cases and could see patterns. He told me that the "pulling of his files" was just a method of termination. And that when he had been relieved of most or all the files he was working, then they could tell him that they didn't need him because he didn't have any cases to work on. Further, on one instance when Jim Bodin came up to get a case file, I told Jim that Carroll said he was being set up for termination (by the pulling of his case files). On another occasion I told Amy the same and she denied such and Julian wrote a memo stating that Carroll was free to work on the files with any attorney who the case was assigned to. I began to take notice and, in retrospect, it was like

2

a witch hunt wherein there would be no rest until Carroll was no longer employed there.

Carroll Was Aggressive
8.   Carroll was praised quite often in my presence by Julian as being aggressive in his work, helping generate cash flow by getting cases settled (while some attorneys received derogatory comments by Julian for either turning down too many cases or for dragging out a settlement). I have read Julian McPhillip's affidavit, para 8, and what I witnessed is inconsistent with his assertions.

Sim Pettway's Leaving
9.   I asked Amy Strickland about Sim Pettway's leaving and she told me that he was asked to leave. Amy Strickland's first affidavit, para 8a., says that his leaving was by mutual agreement.

Wallcovering In Carroll's Office
10.  I coordinated the wallcovering installation in Carroll's office and was familiar with the products used and installed. In September 2004, there was storm damage to the office building and Carroll's office had water stains in several areas of his office. These stains were brown (while the wallcovering was gray) and extended downward a few feet. Further, upon my inspection, mildew had also grown behind the wallcovering on top on the wall substrate. The building insurer was called and I was provided the wallcovering manufacturer information to the adjuster. I later viewed photographs of the roof damage as well as reviewed the line item adjustment and insurance claim check. Carroll requested several times for the walls to be repaired since the insurance money was available (Carroll had originally paid for the installation wallcovering that I arranged to be installed). Amy said that Julian was not going to fix the walls but he was going to use the money for something else. I later asked Amy again if something could be done about the stained walls and I was told that maybe they just paint over the fabric wallcovering. I laughed to myself when I heard this as a remedy. I contacted a supplier and met with them in September 2005, who was able to provide a quotation for the material (with said quote being $1,230.00 plus taxes and freight- not including labor). I presented this to Amy for consideration since there was other work going on in the building such as painting, carpentry, carpet, but the insurance money for damage in Carroll's office was converted to use in other parts of the building.

Carroll's Name Plate On Door
11.  Beginning in February 1997, Betty began occupying the office designated in the diagram (previous to that she occupied the office designated as "Suzanne's Office"). Carroll's name has never been on any interior door other than the door identified as the one that his name was removed from. From February 1997 through May 2006, my name was the only one on the door entering Betty's office. It was our (Paul, Betty and Carroll) practice to bring clients into Carroll's office from the common hallway through the door labeled with

Carroll's name. I have read Amy Strickland's first affidavit, para 15, and her assertions are misleading and incorrect.



Expense Comparison for 2005 vs 2006

12. From time to time I was asked to produce various reports using the McPhillips Shinbaum financial software. I am familiar with the reports and was able to review Amy Strickland's second affidavit, para 17-18 (including exhibits B-C), and found inconsistencies that don't correspond to cost cutting measures and employee reductions as averred. For example: (a) 2006 CPA services were 191.42% higher than 2005, (b) 2006 Advertising was 34.37% higher than 2005, (c) 2006 NSF check charges were 153.64% higher than 2005, (d) 2006 Insurance expense was 6.24% higher than 2005, (e) 2005 Attorney Fees from Settlements was only 4.64% more than 2006, (f) 2006 Legal & Professional Expense was 21.61% higher than 2005, (g) 2006 Gasoline Expense was 248.80 % higher than 2005, (h) 2006 Office Auto Expense was 6.89% higher than 2005, (i) 2006 Office Equipment was 97.35% higher than 2005, (j) 2006 Office Supplies were 7.97% higher than 2005, (k) 2006 Utilities were 424.72% higher than 2005, (l) 2006 Total Payroll Expenses (including retirement contributions) was 6.85% higher than 2005, (m) 2006 Taxes and Licenses were 244.78% higher than 2005.

I declare under penalty of perjury, under the laws of the State of Alabama, that the foregoing is true and correct to the best of my knowledge.

Executed this the \_\_\_23RD\_\_\_ day of May, 2007.

_____*Paul L. Puckett*_____
PAUL L. PUCKETT

STATE OF ALABAMA        )

MONTGOMERY COUNTY )

### VERIFICATION

Before me, the undersigned Notary Public, personally appeared PAUL L. PUCKETT, who being known to me and being first duly sworn, deposes and says that he is the AFFIANT in the above-captioned matter, that he has read the contents of the foregoing, and that the contents of same are true and correct to be the best of his knowledge, information and belief.

SWORN TO AND SUBSCRIBED BEFORE, me this the \_\_23rd\_\_ day of May, 2007.

_____*Paul L. Puckett*_____
PAUL L. PUCKETT

_____*Anna B Davis*_____
Notary Public
(SEAL)

My Commission Expires: \_\_7-29-07\_\_

5