**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

**CARROLL W. PUCKETT,**

      **Plaintiff,**

**v.**

**McPHILLIPS SHINBAUM,** *et al.,*

      **Defendants.**

             **CIVIL ACTION NO.
             2:06-CV-1148-ID
             [wo]**

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Pending before the Court are Defendants' *Second Motion for Summary Judgment* (Doc. 57), Plaintiff's *Response* (Doc. 83), and *Defendant's Reply* Brief (Doc. 85).  Upon consideration of all the arguments and facts, the Court recommends that the District Court GRANT the motion for summary judgment.

### BACKGROUND

Plaintiff Carroll W. Puckett ("Puckett"), a Caucasian male over the age of forty, filed this action against McPhillips Shinbaum, LLP ("McPhillips Shinbaum"), the law firm where he was formerly employed, two of the firm's attorneys, and the firm's business manager.  The facts established by the parties' submissions, viewed in the light most favorable to Puckett, show the following.

Puckett, a Caucasian male in his seventies, has worked since 1979 in various capacities for Defendant Julian McPhillips ("McPhillips") at the law firm of McPhillips Shinbaum.  At all times material to this litigation, Puckett was an employee of the law

firm.  McPhillips and Defendant Kenneth Shinbaum ("Shinbaum") are attorneys licensed to practice law in Alabama.  Defendant Amelia Strickland ("Strickland") has been employed by the firm since 1996 as the firm's office manager and bookkeeper.

Puckett describes his work over the years for McPhillips and the firm as encompassing real estate transactions, financial advice and the performance of paralegal/legal assistant duties.  In 1985, Puckett earned his Juris Doctorate degree.  Puckett took the Alabama State Bar Examination at least twice without passing, and is not licensed to practice law in the State of Alabama.  He was employed as a paralegal/legal assistant when he was terminated on April 28, 2006.

At the time of his termination, Puckett earned an annual salary of $70,000 from the firm.  His total compensation was the sum of three categories of work he performed for the firm.  Specifically, he earned $44,000 for paralegal responsibilities, $18,000 for accounting work, and $8,000 for building management.  His wife worked as his legal secretary, earning a $10,000 annual salary from the firm.

During his tenure with the firm, Puckett experienced "life-threatening" illnesses.  In December 2002, he underwent surgery for the removal of a kidney.  As a consequence, he was hospitalized for two days, but returned to work within three or four days.  In June 2003, Puckett suffered a "minor" stroke, causing him to miss work for approximately three weeks.  In September 2003, Puckett was hospitalized for internal bleeding, a side effect of prescribed medication, and he missed about a week of work.  In December 2003, he was again hospitalized for three or four days for gastrointestinal problems.  None of

these illnesses, however, caused Puckett to fall behind at work or otherwise rendered him unable to fully and successfully perform his job duties.

In June 2004, Puckett was diagnosed with prostate cancer, necessitating that he undergo forty-two outpatient radiation treatments, initially on a weekly basis but, later, on a biweekly basis.  For the most part, Puckett confined his treatments to his lunch hour, and he occasionally would be a little late getting back to the office.  Throughout his treatment, Puckett performed all aspects of his job with no complaint about his job performance from McPhillips.  However, Puckett cites this time period as the beginning of complaints from McPhillips concerning his lunchtime absences.  Second, Puckett alleges McPhillips refused to speak to him directly, instead requiring him to communicate through a third person.  Third, in January 2006, Puckett's name was removed from his door while he was on vacation.  Fourth, from 2004 until his termination, Strickland repeatedly asked his wife (Betty Puckett) when he was going to retire.

Puckett believed that other firm employees removed assigned case files from his office without his knowledge, which prompted him to ask Strickland if the firm was trying to "run him off."  He stated that Strickland took files from his office and reassigned them to attorneys on several occasions.  McPhillips and Strickland began to demand that he account for his time, and his new assignments were cases with little recovery potential.  The maintenance of his case files was criticized, and he was no longer assigned new client cases or permitted contact with clients.

On April 28, 2006, Puckett was fired.  McPhillips attests that Puckett's termination was a business necessity triggered by bad economic times at the firm due to revenue lost when McPhillips became too ill to work.  Consequently, the termination of Puckett and his wife were part of cost saving measures.  Puckett's accounting and building management responsibilities, for which he was paid $26,000, were absorbed by Strickland, who performed these duties with no increase in salary.  Puckett's cases were reassigned to the firm's attorneys who were tasked with handling the cases without help from a paralegal.

Other cost saving measures taken by the firm included asking a law clerk to leave the firm effective March 3, 2006, which saved $35,000 in salary and benefits annually.  McPhillips' secretary was relieved of her duties in April 2006, and that position remained vacant until McPhillips returned to work in October 2006.  The firm eliminated all public relations costs from February to August 2006, discontinued repairs to the firm's building, and began charging postage to clients.  Strickland explained that the firm could no longer afford a law clerk/paralegal position for someone who was not expected to ever pass the Alabama bar exam.

Puckett asserts the firm employed seven paralegal/legal assistants when he and his wife were fired.  Each of these individuals performed, among other duties, secretarial work for attorneys, with the highest salaried employee in this group earning $32,000 annually.  The firm maintains Puckett did not have adequate secretarial skills, though Puckett contends he was capable of performing all duties required of a legal secretary.  Further, Puckett disputes the firm's position that its poor economic conditions prompted

4

his termination and asserts that he was fired so two young females, Elizabeth Spear and Allison Highley, could replace him.

Spear began working with the firm in August 2005, and Puckett was assigned to train her in workers' compensation cases. Spear received her license to practice law in Alabama in September 2005. Highley, a legal assistant/law clerk, was licensed in the State of Washington when she started working with the firm in the summer of 2005. Puckett complains that McPhillips began to make negative comments about his age around the time Spear and Highley were hired. The firm chose to retain Spear because she was licensed to practice law in Alabama and could take over the worker compensation caseload. Highley was likewise retained on the expectation that she would pass the Alabama bar exam in July 2006, and would be able to try cases on her own. Highley left the firm in May 2006 after her salary was reduced from $35,000 to $30,000 in April 2006. The firm cites cost factors in these decisions as well, because Puckett's $70,000 salary doubled Highley's, and was substantially more than Spear's salary of $40,000.

Puckett avers that he began working for McPhillips in 1979, that he contributed to the financial success of McPhillips and the firm, and served as a faithful, loyal and dedicated employee to the time of his termination. Puckett further avers that he was told he would have employment with the law firm "as long as he wanted," and that he was subjected to defamation of character. Doc. 1, at ¶ ¶ 12-13. Puckett states his belief in lifetime employment was grounded in McPhillips' effusive praise for his work and a description of his association with McPhillips as "permanent" in McPhillips'

autobiography.[1]  Doc. 83-4, at ¶ ¶ 4-8.  Puckett also understood that McPhillps intended him to have lifelong job security in appreciation of all he had done for him and his role in his success.  Doc. 83-3, at 25.  He acknowledged that McPhillips never expressly made such a statement, but that he and McPhillips "were as close as brothers" and "some of [McPhillips'] statements were pretty strong."  Doc. 83-3, at 26-27.

Puckett avers his pleadings present substantial evidence of defamation, and refers the Court to passages in affidavits by himself and his wife which refer to a cessation of new work assignments from the firm.  Doc. 20, at 26-27; Doc. 83-2, at 43, ¶ 22; Doc. 83-2, at 56, ¶ 9.

On December 27, 2006, Puckett filed this lawsuit against the firm and McPhillips, Shinbaum, and Strickland as individuals.  The Complaint alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17 ("Title VII"); the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621-634; and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12111-12117.  Puckett also alleged defendants' actions violated the Alabama Age Discrimination in Employment Act.  Ala. Code § 25-1-22 (1975).  Additional state law claims allege fraudulent misrepresentation and defamation.  Ala. Code §§ 6-5-101, 182 (1975).

Defendants filed a Motion for Summary Judgment with supporting brief (Doc. Nos. 7 and 8), and Puckett filed his Response (Doc. 20).  After careful analysis of Puckett's claims, this Court granted defendants' motion for summary judgment as to Puckett's (1) Title VII, ADEA, and ADA claims against the individual employees of the

---

[1] The People's Lawyer, the Colorful Life and Times of Julian L. McPhillips, Jr. (2000), at 197.

firm; (2) Title VII gender and national origin discrimination claims; (3) Title VII retaliation claim; (4) ADA claim; (5) Title VII hostile work environment gender and national origin harassment claims; and (6) state-law defamation claim.  Summary judgment was denied on Puckett's state-law fraud claim and age discrimination claims under federal and state statutes.  Doc. 44, at 55.  Thus, the remaining claims are against the law firm on the age discrimination claims and against defendant Julian McPhillips on the fraud claim.

The Court's earlier findings as to the facts presented for the ADEA claim are critical to deciding the pending motion.  First, the Court determined that Puckett was not replaced by any one employee, but that his tasks were absorbed by the remaining employees.  Doc. 44, at 21-22.  The Court found the defendants' reason for termination, a reduction in force, to be legitimate and non-discriminatory.  Doc. 44, at 24.  It also found that neither the firm's legal secretaries, nor Spear and Highley, both licensed attorneys, are comparator employees for purposes of the Title VII, the ADA, the ADEA, or the AADEA.  Doc. 44, at 28-33.  The Court found that McPhillips' alleged comments concerning Puckett's  age, coupled with criticism of his job performance, and "constant" inquiries about Puckett's retirement by Stickland precluded summary judgment for defendants at that stage of litigation.  The proximity of McPhillips' alleged comments to Puckett's termination suggested "a relatedness between the comments and the employment decision."  Doc. 44, at 36.  Strickland's alleged questions concerning retirement were also deemed a matter for further analysis, as the facts, construed in the

light most favorable to Puckett, could infer that Strickland played a part in his termination.  Doc. 44, at 36-37.

Defendants filed a Second Motion for Summary Judgment with a supporting brief on the remaining issues.  *See* Docs. No. 57, 58.  After Plaintiff filed his Response and exhibits (Doc. 83),[2] defendants filed a Reply Brief (Doc. 85).  This Recommendation relies in part upon the facts and findings set forth in the Memorandum Opinion and Order issued by the District Court.

## II.  JURISDICTION AND VENUE

This lawsuit presents employment discrimination claims brought pursuant to federal statutes and state law.  The court exercises subject matter jurisdiction over this action, pursuant to 28 U.S.C. §§1331 (federal question jurisdiction), 29 U.S.C. §§ 621 *et seq.* (ADEA), and 28 U.S.C. § 1367 (supplemental jurisdiction).  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2).  *See* Doc. 1 at ¶ 3.  Personal jurisdiction is not disputed and there is sufficient evidence to support it.

## III.  SUMMARY JUDGMENT STANDARD

Summary judgment should be granted when "the pleadings, the discovery and the disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  Under Rule 56, the moving party "always bears the initial responsibility of informing the district court of the basis for its motion."  *Celotex Corp. v. Catrett*, 477

---

[2] Puckett incorporates by reference his Response to Defendant's (First) Motion for Summary Judgment (Doc. 20). That response, along with affidavits and deposition testimony, are attached to his Response to Defendant's Second Motion for Summary Judgment.  Doc. 83-2.

U.S. 317, 323, 106 S.Ct. 2548 (1986).  "[T]he court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment."  *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995).  The movant can meet this burden by presenting evidence showing that there is no genuine issue of material fact, or by showing that the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Celotex Corp.*, 477 U.S. at 322-23.

Once the moving party has met its burden, the opposing party may not rest on its pleadings; rather, it must respond by affidavits or as otherwise provided in the rule – setting out specific facts showing a genuine issue for trial.  Fed. R. Civ. P. 56(e)(2).  To avoid summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348 (1986).  A genuine factual dispute exists if a "'reasonable jury could return a verdict for the non-moving party.'"  *Damon v. Fleming Supermarkets, Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).  After the nonmoving party has responded, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(c).

## IV.  DISCUSSION

**Age Discrimination**

Defendants advance three separate arguments for summary judgment in favor of defendants on the age discrimination claims.  They are (1)  McPhillips Shinbaum is not an employer within the meaning of the ADEA; (2) Puckett has not made a prima facie case, or, alternatively, has not rebutted the legitimate non-discriminatory reason for his termination; and (3) Puckett cannot prevail on his ADEA claim because, even assuming his age was a consideration in terminating his position, the same termination decision would have been made for alternative reasons.  The third argument asserts that, even if age was an unlawful motive for terminating Puckett's employment, McPhillips Shinbaum would have taken the same action for various financial reasons.  Doc. 58, at 26-29.  Puckett's Response maintains that he can meet his ADEA burden of proof by showing that age was a determinative factor, though not necessarily  the sole reason for his termination.  Doc. 83, at 5.  Courts cannot consider mixed motives for proof, nor a "same decision" defense in ADEA cases after the Supreme Court decision in *Gross v. FBL Financial Services*, ___ U.S. ___, 129 S.Ct. 2343 (2009).  *See Mora v. Jackson Memorial Foundation, Inc.*, ___ F.3d ___, 2010 WL 610263, *2 (11th Cir. Feb. 23, 2010) (explaining that under the ADEA after *Gross*, an "employer either acted 'because of' the plaintiff's age or it did not.").  Consequently, this theory of liability and the corresponding defense are immaterial to this case and will not be discussed.

In *Kok v. Kadant Black Clawson, Inc.*, 274 Fed.Appx. 856, 858 (11th Cir. 2008), the Eleventh Circuit cited the Alabama Supreme Court's decision in *Robinson v. Ala.*

*Cent. Credit Union*, 964 So.2d 1225, 1228 (Ala. 2007), to hold that the Alabama Age

Discrimination in Employment Act (Ala. Code § 25-1-20 *et seq.* (1975)) uses the same

analytical framework that applies to federal age-discrimination claims.  Accordingly,

Puckett's success or failure under the ADEA will determine both claims.  A brief review

of the applicable protections and definitions relevant to Puckett's claims is in order

before the legal analysis can proceed.[3]

The federal and state age discrimination statutes protect individuals who are at

least 40 years of age.  29 U.S.C. § 631(a); Ala. Code § 25-1-21 (1975).  Under the Acts, it

is unlawful for an employer "to discharge any individual or otherwise discriminate

against any individual with respect to his compensation, terms, conditions, or privileges

of employment, because of such individual's age."  29 U.S.C. § 623; Ala. Code § 25-1-22

(1975).  "Employer" is defined as "a person engaged in an industry affecting commerce

who has twenty or more employees for each working day in each of twenty or more

calendar weeks in the current or preceding calendar year."  29 U.S.C. § 630(b); Ala. Code

§ 25-1-20(2) (1975).  The term "person" includes individuals, partnerships, or any

organized group of persons.  29 U.S.C. § 630(a).  "Employee" is defined as "an

individual employed by any employer."  29 U.S.C. § 630(f).

### *Is McPhillips Shinbaum an "employer," as defined by the ADEA?*

Defendants argue that the defendant law firm, McPhillips Shinbaum, is not an

employer within the meaning of the ADEA because it did not have the requisite "twenty

or more employees" during 2005 or 2006.  Defendants cite *Clackamas Gastroenterology*

---

[3] Where applicable, the cites for the Alabama Age Discrimination in Employment Act (AADEA) will follow those for the parallel federal provisions.

*Assoc., P.C. v. Wells*, 538 U.S. 440, 123 S.Ct. 1673 (2003), which addressed whether physicians who acted as shareholders and directors of a professional corporation, in addition to practicing medicine, were counted as employees under the Americans with Disabilities Act.  The Supreme Court remanded *Clackamas* so the district court could evaluate the physician/shareholders' status under traditional common-law agency principles.  *Clackamas*, 538 U.S. at 449-50, 123 S.Ct. at 1680.  The Court summarized its directions to the lower court by stating "the answer to whether a shareholder-director is an employee depends on 'all of the incidents of the relationship . . . with no one factor being decisive.'"  *Id.* at 451, 123 S.Ct. 1681, quoting *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 324, 112 S.Ct. 1344 (1992).   Defendants offer *Clackamas* to support their position that the structure and nature of the legal partnership known as McPhillips Shinbaum requires the firm's partners to be excluded from the total number of employees for ADEA purposes.  After such exclusion, McPhillips Shinbaum carried, at most, fifteen non-partner employees during 2005 and 2006.  Doc. 58 at 14.

Defendants also argue that partners should be excluded under *Fountain v. Metcalf, Zima & Co., P.A.*, 925 F.2d 1398 (11th Cir. 1991).  In that case, the Eleventh Circuit issued a ruling of first impression to deny plaintiff, a partner in an accounting firm, status to file an ADEA claim.  In finding that the partner was not an "employee" of his former firm, the Court relied upon two Seventh Circuit cases which held that a member/shareholder in a law firm and an accounting firm partner were not employees. *Fountain*, 925 F.2d at 1400, (citing *E.E.O.C. v. Dowd &Dowd*, 736 F.2d 1177 (7th Cir. 1984) and *Burke v. Friedman*, 556 F.2d 867 (7th Cir. 1977)).  Under *Fountain,* defendants

argue, there is no genuine issue of material fact on this issue, and judgment in their favor is in order.

Although defendants' argument is persuasive, the court is reluctant to grant judgment solely on this point.  A strong dissent by Justice Ginsburg in *Clackamas* pointed out that "[T]here is nothing inherently inconsistent between the coexistence of a proprietary and an employment relationship." *Clackamas, Id*. at 451, 123 S.Ct. 1681.[4] Also, because *Fountain* applied to an accounting firm, rather than a legal partnership, reaching the same outcome in this case would not be specifically mandated by precedent, but rather, an extrapolation based on a similar professional relationship.  For this reason, and because the facts must be construed in favor of the non-moving plaintiff, the court declines to find that the law firm's partners are not employees, or reach the correlating conclusion that the firm is not an "employer" under the ADEA.

> *Has Puckett presented a prima facie case, or alternatively, rebutted legitimate nondiscriminatory reasons for his termination?*

Puckett does not contend that there is direct evidence of discrimination, therefore, the allocation of proof on his ADEA and AADEA claims shifts in accordance with the three-step procedure established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817 (1973), which gives a plaintiff the initial burden of production in discrimination cases.[5]  First, a plaintiff must produce evidence sufficient to make out a

---

[4] *See also Garcia v. Copenhaver, Bell & Assoc, M.D'S, P.A.*, 104 F.3d 1256 (11th Cir. 1997) (treating definition of "employer" as an issue for jury decision in factual attack on subject matter jurisdiction).
[5] In *Gross*, the Supreme Court noted that it "has not definitively decided whether" the *McDonnell Douglas* evidentiary framework is appropriate in the ADEA context.  *Gross,* 129 S.Ct. at 2349 n.2.  However, the Eleventh

prima facie case of discrimination.  *Chapman v. AI Transport, et al.*, 229 F.3d 1012, 1024 (11th Cir. 2000).  Defendants then must articulate legitimate nondiscriminatory reasons for the challenged employment action.  *Id.*  Under the last step, the plaintiff must show the articulated reasons are pretext for discrimination.  *Id.*  Plaintiff must proffer sufficient evidence to create a genuine issue of material fact as to whether a defendant's proffered reasons are pretextual.  *Id.* at 1024-25.  Although the establishment of a prima facie case shifts the burden of production to the defendant, it does not reallocate the burden of persuasion.  *St. Mary's Honor Center. v. Hicks,* 509 U.S. 502, 507, 113 S.Ct. 2742, 2747 (1993) (Quoting *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093 (1981)).

Generally, a plaintiff establishes a prima facie case for an ADEA violation by showing that "he (1) was a member of the protected age group, (2) was subjected to adverse employment action,  (3) was qualified to do the job, and (4) was replaced by or otherwise lost a position to a younger individual."  *Id.* at 1024.  The last two prima facie criteria are modified in this case because Puckett was not replaced, but rather, his job duties were absorbed by the remaining employees as part of the firm's cost cutting measures.  Doc. 44, at 17-18.  As previously noted by this Court, the *McDonnell Douglas* framework is modified when a reduction in force is a defendant's response to claims of a discriminatory termination.  In such cases, the plaintiff must show (3) that he was qualified for another position at the time of termination, and (4) that the employer intended to discriminate in failing to consider plaintiff for another position.  *Coutu v.*

Circuit has applied the *McDonnell Douglas* method in a post-*Gross* decision.  *See Guimaraes v. NORS*, No. 09-12569, 2010 WL 529296, at *3 (11th Cir. Feb. 16, 2010).

*Martin County Bd. of County Comm'rs*, 47 F.3d 1068, 1073 (11th Cir. 1995); *see also* Doc. 44, at 22.

Defendants' motion addresses the issue which terminated the district court's prima facie analysis under *Coutu*, i.e., whether Puckett was qualified for another non-lawyer position at the firm in April 2006.  Doc. 44, at 22.  Defendants argue that Puckett could not serve as a legal secretary due to his lack of secretarial skills or experience.  Puckett insisted in his deposition that he could serve as a legal secretary because he typed "a lot of" pleadings given to him by McPhillips over the twenty seven years he worked with him.  Doc. 83-3, at 19.  However, Puckett could not remember whether he ever typed a brief for McPhillips.  Doc. 83-3, at 14.  Puckett declined to demonstrate his typing skills during his deposition, at his lawyer's request.  Doc. 83-3, at 19-20.  However, he estimated he could type seventy to eighty words per minute.  Doc. 83-3, at 19.  Puckett stated that he served as a legal secretary to (Jim Lee) DeBardelaben "at certain times" and Karen Sampson, a former partner at the firm.  Doc. 83-3, at 20-21.  Yet, Puckett claims that "none of the lawyers in the firm ever asked him to perform secretarial duties." Doc. 83-2, at 30.  He also asserts that he is "very proficient in computer and word processing skills and he has been typing his own work since the early 80's."  Doc. 83-2, at 24.  Finally, as to the fourth prima facie element of intentional discrimination under *Coutu*, Puckett asserts that the firm did not want a male legal assistant to perform secretarial work.  Doc. 83-2, at 24.

Despite Puckett's claim that he could have served the firm as a legal secretary, the most favorable conclusion is that his actual experience in that classification was sporadic,

at best.  In addition, Puckett's credibility on this point is significantly diminished, given

his own assertion that "none of the lawyers in the firm ever asked him to perform

secretarial duties."  His lack of experience, coupled with his own need for a secretary,

supports the defendants' argument that Puckett was unsuitable for employment as a legal

secretary.  The court's conclusion that Puckett was not a candidate for legal secretary at

the firm precludes any discussion of the unsupported claim that his gender was the

motive for intentional discrimination.  Thus, Puckett cannot move beyond step three of a

prima facie showing under the modified *McDonnell Douglas* analysis for this job

description.

Amy Strickland was the other non-lawyer employee who was not terminated.

Defendants defend their decision to retain Strickland by emphasizing her familiarity with

office finances and the day-to-day affairs of the firm.  Puckett does not claim that he was

eligible for this position, and again, the modified analysis terminates at this step.  Puckett

has not demonstrated a prima facie case for ADEA liability where employees were not

replaced with another worker.  Therefore, his ADEA and AADEA claims fail, as Puckett

has not shown he was eligible for work as a legal secretary or office manager.[6]

Even though Puckett has not demonstrated a prima facie case, the Court finds,

alternatively, that his ADEA claim could not move forward because he has not shown

that the reduction in force undertaken by the defendants was pretext for his termination.

---

[6] Puckett's failure to establish a prima facie case pretermits a discussion of whether alleged comments by McPhillips or retirement questions from Strickland were part of an attempt to force Puckett out because of his age.  As noted by the district court, inquiries into these allegations *assumed* Puckett's establishment of a prima facie case for ADEA purposes.  Doc. 44, at 37-38.  That assumption has not been borne out under the modified *McDonnell Douglas* analysis.

In reduction in force cases, superior qualifications may be used to establish pretext. *Tippie v. Spacelabs Med., Inc.*, 180 Fed.Appx. 51, 55 (11th Cir. 2006).  This Court found the reduction in force was legitimate and rational, and that Puckett did not show that his skills were superior to those of Spear and Highley.  Doc. 44, at 24, 33.  Likewise, he has neither argued, nor shown, that he was better suited than Strickland to serve as the firm's office manager.  Summary judgment is due to be granted to defendants on the federal and state claims of age discrimination.

### State Fraud Claim

Puckett alleges that his termination violated McPhillips' implicit promise of lifelong employment under the Alabama statute which provides "[M]isrepresentation of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud."  Ala. Code § 6-5-101 (1975).  Puckett argues there is a genuine issue of material fact as to whether McPhillips made a fraudulent promise of lifetime employment.  Puckett's deposition testimony acknowledges that McPhillips never explicitly stated that he had a guarantee of lifelong employment, but that strong statements indicating such led him to believe he was, in fact, employed for life.

Permanent or lifetime employment contracts are "extraordinary" under state law and are not to be lightly implied.  *Howard v. Wolff Broad. Corp.,* 611 So.2d 307, 311 (Ala. 1992) (placing a heavy burden on employee seeking to demonstrate the existence of a lifetime contract).  Alabama state courts reviewing claims of lifetime employment look to see "(1) that there was a clear and unequivocal offer of lifetime employment or

employment of definite duration; (2) that the hiring agent had authority to bind the principal to a permanent employment contract; and (3) that the employee provided substantial consideration for the contract separate from the services to be rendered." *Turner v. Newsom*, 3 So.3d 913 (Ala.Civ.App. 2008) (internal citations omitted).

Puckett acknowledges that McPhillips never made a clear and unequivocal offer of lifetime employment, but that he understood the promise to have been made as a result of years of a happy working relationship, praise from McPhillips, and "strong statements." The combination of these circumstances "convinced" Puckett that he had employment with the firm for as long as he wanted. Doc. 83-2, at 43. Puckett argues his deposition testimony showed that McPhillips promised him a job as long as he chose to work for the firm, and that his reliance was reasonable. He further submits his decision to forego employment with another employer as an element of detrimental reliance. Doc. 83, at 14.[7]

Defendants highlight the fact that Puckett could not have relied on McPhillips' alleged promise because he, along with all other employees, received the firm's Personnel Handbook which specified that all employees of the firm were "at will" employees. Puckett acknowledged receipt of the handbook in 2001, but contends the handbook "did not have a provision for how long an employee could be employed." Doc. 58, at 33; Doc. 83, at 14. Defendants argue that any reliance Puckett may have had on McPhillips' statements, as required under § 6-5-101, was unreasonable after receiving

---

[7] Defendants reply that Puckett cited only one other offer of employment was received by Puckett in the 1980's. Doc. 58, at 35, n.11; Doc. 85, at 27, n.7. The terms of the offer were for the same pay that Puckett was currently receiving from McPhillips Shinbaum.

the handbook, as its provisions conflicted with his understanding that he had a lifetime employment contract.  *See Tyler v. Equitable Life Assur. Soc. of U.S.*, 512 So.2d 55, 57 (Ala. 1987) (emphasizing that reliance element of a fraud claim must be reasonable under the circumstances, and cannot be predicated on a verbal statement made before execution of a written contract when a written provision contradicts the verbal statement.)

Defendants do not challenge the second element of the *Turner* test for a lifetime employment contract, *i.e.,* that McPhillips had the authority to make the promise claimed by Puckett.  Rather, they focus on the final element of whether Puckett provided "substantial consideration for the contract separate from the services to be rendered." Alabama courts "inquire into the actual value of the consideration."  *Turner,* 3 So.3d at 917.  Defendants contend Puckett could not show that he gave consideration beyond his mere performance of assigned duties at the firm.  Doc. 58, at 35.  Puckett submits that, at McPhillips' urging, he substantially refused offers of employment elsewhere.  Doc. 83, at 14.

Examples of adequate consideration are surveyed in *Turner*, which states "Alabama law recognizes as substantial consideration an employee's giving up prior employment or another job opportunity as substantial consideration supporting a permanent or lifetime employment contract."  *Turner, id*. at 921.  However, the employment relinquished must be of "substantial" character.  *Turner, id*., quoting *Lee v. City of Gadsden*, 592 So.2d 1036, 1039 (Ala. 1992).  *Lee* explains that sufficient consideration exists in two situations - where the employee relinquishes a prior claim against the employer, or the employee relinquishes prior "substantial" employment with

knowledge of such relinquishment by the employer.  *Lee,* 592 So.2d at 1039.  Here, though Puckett does not discuss whether he provided "substantial" consideration within the meaning of Alabama law under *Turner*, the pleadings do not show that he chose to forego a prior claim against McPhillips, and his affidavit shows that he began his working relationship with McPhillips when he was "in trouble."  Doc. 83-4, at 1.  Thus, the origins of McPhillips' and Puckett's professional relationship does not support a finding that Puckett gave up something of value, or provided "substantial" consideration of the type contemplated by *Lee*.  Rather, the circumstances as related by Puckett show that he and McPhillips found themselves in a mutually beneficial professional relationship that ended when McPhillips Shinbaum experienced a financial downturn.

Accordingly, the court finds that Puckett has not met the burden of proof necessary to show that he had a lifetime contract of employment with Defendant McPhillips.  He did not show that he received a clear and unequivocal offer of lifetime employment, and he did not show that he provided substantial consideration for the employment guarantee.  The absence of these elements required under Alabama law requires summary judgment be granted to defendants on this claim.

## V.  CONCLUSION

Pursuant to the foregoing findings and conclusions, it is the **RECOMMENDATION** of the Magistrate Judge that the motion for summary judgment filed by the defendants (Doc. 57) be **GRANTED**, and this case be dismissed.

It is further **ORDERED** that the parties shall file any objections to the said Recommendation not later than **April 13, 2010.**  Any objections filed must specifically

identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

DONE this 30th day of March, 2010.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE